NIALL P. McCARTHY (SBN 160175)
nmccarthy@cpmlegal.com
JUSTIN T. BERGER (SBN 250346)
jberger@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 692-3606

GARY KLEIN
klein@roddykleinryan.com
**RODDY, KLEIN & RYAN**
727 Atlantic Avenue, 2nd Floor
Boston, MA 02111
Telephone: (617) 357-5500
Facsimile: (617) 357-5030

DANIEL SCHLANGER
daniel@schlangerlegal.com
JEANNE M. CHRISTENSEN
jeanne@schlangerlegal.com
**SCHLANGER & SCHLANGER, LLP**
1025 Westchester Avenue, Suite 108
White Plains, New York 10604
Telephone: (914) 946-1981
Facsimile: (914) 946-2930

*Attorneys for Plaintiffs*

FILED
2011 FEB -2 P 3:58
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
N.D. OF CA. S.J.

ADR

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

CASE NO. CV11-00514 HRL

**DAVID GRAAS**, an individual;
**SEAN KRIDER**, an individual;
on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

**PORSCHE CARS NORTH AMERICA, INC.**, a Delaware corporation;

Defendant.

**CLASS ACTION COMPLAINT FOR:**

(1) **VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT (CAL. CIV. CODE §§ 1750, *et seq.*);**

(2) **VIOLATION OF CALIFORNIA UNFAIR BUSINESS PRACTICES ACT (CAL. BUS. & PROF. CODE §§ 17200, *et seq.*); AND**

(3) **UNJUST ENRICHMENT**

**JURY TRIAL DEMANDED**

ORIGINAL

LAW OFFICES
COTCHETT,
PITRE, &
McCARTHY, LLP

**CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | SUMMARY OF THE CASE | 1 |
| II. | PARTIES | 2 |
| III. | JURISDICTION AND VENUE | 2 |
| IV. | TOLLING | 2 |
| V. | COMMON FACTUAL ALLEGATIONS | 3 |
| | A. Plaintiff David Graas' Experience | 6 |
| | B. Plaintiff Sean Krider's Experience | 7 |
| VI. | CLASS ACTION ALLEGATIONS | 8 |
| VII. | CAUSES OF ACTION | 12 |

FIRST CAUSE OF ACTION
(Violation of California Consumer Legal Remedies Act;
California Civil Code §§ 1750, *et seq.*) .................................. 12

SECOND CAUSE OF ACTION
(Violation of California Unfair Business Practices Act;
Cal. Bus. & Prof. Code §§ 17200, *et seq.*) .............................. 13

THIRD CAUSE OF ACTION
(Unjust Enrichment) .................................................................. 14

**PRAYER FOR RELIEF** .................................................................. 15

**JURY TRIAL DEMAND** ................................................................ 16

Plaintiffs David Graas and Sean Krider, on behalf of themselves and all others similarly situated allege as follows:

## I. SUMMARY OF THE CASE

1. This class action is brought by Plaintiffs seeking damages and equitable relief on their own behalf and on behalf of all other California residents who have purchased Porsche Cayenne automobiles.

2. Porsche manufactured all of its Cayenne models with plastic coolant tubes rather than aluminum coolant pipes as part of the vehicle's cooling system.

3. Porsche installed the plastic coolant tubes knowing that the tubes will prematurely degrade and fracture. This failure causes coolant fluid to leak, often resulting in coolant seeping directly into the vehicle's starter and transmission seals causing possible engine damage and engine failure. When Cayenne owners present their vehicles to Porsche for repair or replacement, they cannot purchase the same plastic coolant tubes installed by Porsche at the time of manufacture. Rather, Cayenne owners are forced to purchase an OEM "update kit" from Porsche that replaces the plastic coolant tubes with aluminum coolant pipes for all Cayenne models.

4. Porsche knows that its customers will ultimately be forced to replace the plastic coolant tubes with costly aluminum coolant pipes and thereby incur not just the cost of the replacement pipes, but also significant labor costs. Despite this knowledge, Porsche made a corporate decision to conceal information about the defects in the original parts from its customers. Moreover, Porsche has chosen not to warn consumers of the potential dangers of a sudden coolant spill directly into the starter and transmission seals. Porsche continues to promote the Cayenne engine and its component parts as safe, reliable and free from material defects.

5. As a result of Porsche's practices, Plaintiffs and Class members have suffered injury in fact and have lost money or property, including economic damages. Moreover, Porsche has committed unfair and/or deceptive acts and practices under the laws of California and unjustly enriched itself at the expense of California consumers.

6. Therefore, Plaintiffs bring this action on behalf of a proposed class of similarly situated Porsche Cayenne owners and lessees located in the State of California.

## II. PARTIES

7. Plaintiff David Graas is a resident of San Jose, California. Plaintiff Sean Krider is a resident of Eldorado Hills, California.

8. Defendant Porsche Cars North America, Inc. ("Porsche") is a Delaware corporation with its principal place of business located in Atlanta, Georgia. Porsche Cars North America, Inc., is an American subsidiary of the German company, Porsche Automobil Holding SE.

9. At all relevant times, Porsche was responsible for the sales, service, and marketing of all Porsche vehicles in the United States, including all Cayenne models.

## III. JURISDICTION AND VENUE

10. This Court has jurisdiction under 28 U.S.C. §1332 because the proposed class consists of 100 or more members and the aggregated claims of the individual class members exceed the sum or value of $5,000,000, exclusive of costs and interest. Additionally, at least one Class member is a citizen of a state different from Porsche.

11. Venue is proper in this District under 28 U.S.C. §1391 because at least one Plaintiff resides in this District, Porsche transacts business and is found within this District and a substantial part of the events and conduct giving rise to the violations of law alleged in this Complaint arose in this District.

## IV. TOLLING

12. Discovery Rule Tolling: Plaintiffs could not have discovered through the exercise of reasonable diligence that the vehicle's plastic cooling tubes were defective within the time period of any applicable statute of limitations. Among other things, Plaintiffs did not know and could not have known that the cooling tubes regularly fail in other similar vehicles and/or that Porsche recommended to its dealerships that they be replaced with aluminum tubes. Plaintiffs did not and could not have performed a visual inspection that would have revealed the defect.

13. Fraudulent Concealment Tolling: Any applicable statute of limitations that might otherwise apply to bar any of Plaintiffs' claims is tolled by Porsche's knowing and active concealment of the fact that its plastic cooling tubes fail and need to be replaced with costly aluminum coolant pipes. Porsche kept Plaintiffs ignorant of vital information essential to the pursuit of their claims. Plaintiffs could not have discovered, even upon reasonable exercise of diligence, that their plastic coolant tubes would prematurely crack and fail.

14. Estoppel: Porsche was under a continuous duty to disclose to Plaintiffs the true character, quality and nature of the plastic coolant pipes. Porsche knowingly, affirmatively and actively concealed the true nature, quality and character of the plastic coolant pipes from consumers. Based upon the foregoing, Porsche is estopped from relying on any statutes of limitations in defense of this action.

## V. COMMON FACTUAL ALLEGATIONS

15. Porsche sells and distributes automobiles, sold under the Porsche brand name to approximately 202 dealerships located throughout the United States. Porsche also provides parts, service, marketing, advertising and training for its dealerships.

16. California has more Porsche authorized dealerships than any other state in the country.

17. Porsche advertises that the company has "developed numerous technologies that have advanced vehicle performance, improved safety and spurred environmental innovations within the automotive industry." Porsche maintains that it "strives to maintain a standard of excellence, commitment and distinction synonymous with its brand."

18. With respect to design, Porsche claims to have invented "The concept of maximum power with minimum weight."

19. In 2003, Porsche first introduced the "Cayenne" sports utility model to the United States.

20. The Cayenne's cooling system is described in a Porsche brochure as follows: "Keeping cool is essential to any engine. A high-performance engine can only maintain its maximum capability over a long service life if all components are operating consistently within a

CLASS ACTION COMPLAINT                                                                 3

specific temperature range. The engines in the new Cayenne models are therefore designed for optimal cooling."

21. The cooling system is an integral part of the engine. The coolant pipes circulate coolant through the engine while simultaneously maintaining an even temperature throughout the motor. Various pipes and seals make up the "water crossover" section of the cooling system, which carries coolant to and from the engine. These pipes carry the cooled coolant from the radiator into the engine block, thus cooling the engine. The heated coolant is then carried out of the engine from the coolant pipes through the thermostat and back to the radiator where it is cooled and brought back into the engine via the coolant pipes. The coolant traveling from the engine back to the radiator is extremely hot. Most high end performance vehicles with powerful engines use aluminum pipes to transport the coolant. Aluminum pipes have been proven to withstand the extreme temperatures of the cooling system. The Cayenne models, however, are manufactured with plastic coolant tubes.

22. As a result of continuous exposure to extreme heat, the plastic coolant tubes crack and degrade. Compounding this problem, as part of the Cayenne engine design, the plastic tubes are located between the intake manifold and the engine, a placement that guarantees constant increased exposure to heat. Specifically, unlike most vehicles, the water crossover in the Cayenne is not located on top of the engine. Rather, Porsche has designed the water crossover such that the plastic coolant tubes sit directly on top of the vehicle's starter and engine block.

23. This combination of placement relative to the engine and use of plastic composite material to carry the coolant, virtually guarantees that the plastic coolant tubes installed on the Cayenne's will prematurely fracture and fail. The plastic coolant tubes in the Cayenne are defective, as they regularly fail under normal use and within the cooling system's expected useful life, rendering the vehicle inoperable and causing engine damage.

24. Coolant escaping from the cracked plastic coolant tubes can come into contact with the starter and permanently damage it. Escaping coolant can also leak into the Tiptronic torque converter area. If this occurs, the Tiptronic transmission torque converter seals can be

damaged, causing coolant to leak between the transmission and the torque converter. Extensive coolant leakage to this area can result in complete transmission failure.

25. When a consumer attempts to correct the defective plastic coolant tubes, the consumer is immediately faced with a costly labor charge. A mechanic cannot access the coolant tubes and properly diagnose the problem without disassembling a significant portion of the engine. Once the cracked tube is located, the Cayenne owner is then informed that Porsche does not offer replacement plastic coolant tubes. Rather, the Cayenne owner must purchase from Porsche aluminum coolant pipes. The aluminum pipes cost more than $1,000, which is significantly more than the originally installed plastic coolant tubes. Specifically, the consumer is forced to buy an "OEM update kit" that contains the aluminum coolant pipes. The new aluminum coolant pipes are designed to last the lifetime of the engine. The labor to install the aluminum coolant pipes is on average 8-10 hours for experienced mechanics. The average hourly rate of Porsche certified mechanics in California is between approximately $95 and $165 per hour.

26. Porsche acknowledged the defective nature of plastic coolant tubes as part of its engine design in an internal technical bulletin (Exhibit A to this complaint) issued to authorized Porsche mechanics which states in part:

> Coolant Pipe Leak
>
> . . . .
>
> Information: Plastic coolant pipe leaking.
>
> . . . .
>
> Note: Both coolant pipes (lower and heater) must be replaced at the same time with new coolant pipes made from aluminum.

27. Porsche is aware of the failure rate of its plastic coolant tubes and has received many complaints from customers concerning failure of the tubes since 2003. In fact, one of the leading independent Porsche publications, "Excellence" magazine, has run multiple articles highlighting the problem, most recently a Spring 2011 article detailing the problem and stating:

"The demise of the original Cayenne V8's plastic valley coolant pipes is pretty much unavoidable; at some point, they will leak and require replacement."

28. While publicly touting the Cayenne's performance, Porsche knew, reasonably should have known, or was reckless in not knowing that the use of the plastic coolant tubes would result not just in failure of the parts, but also in possible damage to the Cayenne's engine and/or its component parts.

29. The fact that the plastic tubes were destined to crack and fracture and that they were subject to a costly replacement program were material facts. Knowledge of these material facts would have altered consumers' buying decisions.

30. Rather than fix the problem, Porsche chose to exploit its customers by making them incur the cost of new parts and labor charges for the repair - as well as to run the risks associated with resulting engine damage.

31. As a result of Porsche's practices, Plaintiffs and Class members were overcharged by Porsche for their vehicles, and incurred, or will incur, expensive repairs that they should not have to bear. As a result of Porsche's concealment and deceptive practices, Porsche was unjustly enriched.

### A. Plaintiff David Graas' Experience

32. In December 2008, Plaintiff Graas bought his 2004 Cayenne Turbo for approximately $27,000.

33. In March 2010, Mr. Graas became aware that the plastic coolant tubes in his Cayenne model had been known to prematurely crack. Concerned that this problem would occur while he was driving, he brought his Cayenne to his local authorized Porsche dealer, Stevens Street Porsche in San Jose, and had them conduct a pressure test for a possible coolant leak. Mr. Graas was told that the pressure test revealed no problems.

34. Several months later, in September 2010, while driving with his daughter on Highway 88 in the Sierra Nevada mountain range, his plastic coolant pipes burst.

35. Stranded on the highway in the middle of the night, Mr. Graas attempted to call all towing companies within a 100 mile radius, but no one would come out. Eventually, California

highway patrol officer arrived and stayed with Mr. Graas and his daughter until a relative arrived to get them, approximately four hours later.

36. Mr. Graas was issued a warning for having to leave his disabled Cayenne on Highway 88.

37. Unable to find a tow company willing to get the Cayenne, Mr. Graas was forced to rent a vehicle himself and tow the Cayenne all the way back to San Jose.

38. Mr. Graas' local Porsche dealership, Stevens Street Porsche, replaced the cracked plastic coolant tubes with the OEM "update kit". This repair cost Mr. Graas approximately $2200.

39. Unfortunately, less than 48 hours after the aluminum pipes were installed, the Cayenne's transmission seals failed, causing the entire transmission to fail. Mr. Graas was told that the transmission seals failed because of the coolant leakage into his engine when his plastic coolant tubes cracked. Stevens Street Porsche estimated that it would cost Mr. Graas approximately $5000 to $8000 to repair the transmission.

40. Due to his inability to pay for this costly repair, Mr. Graas traded in his damaged Cayenne to a local VW dealership for approximately $18,000, less than two years after purchasing the vehicle.

41. As a consequence of Porsche's practices, Plaintiff Graas paid more for his vehicle than the vehicle was worth and incurred out- of-pocket expenses to repair and replace the defective coolant hoses. He then lost money on the trade-in of the vehicle in order to avoid additional expensive repairs.

B. **Plaintiff Sean Krider's Experience**

42. In September 2008, Mr. Krider purchased a 2004 Cayenne Turbo with roughly 29,000 miles. Mr. Krider purchased the vehicle because he believed the Cayenne Turbo was a high performance vehicle manufactured to the highest standards. Mr. Krider was not aware that Porsche manufactured the vehicle with coolant tubes made of plastic that were destined to stress and fracture.

LAW OFFICES
COTCHETT,
PITRE, &
MCCARTHY, LLP

CLASS ACTION COMPLAINT       7

43. While driving his children to a Halloween event on October 31, 2010, the coolant pipes in his Cayenne completely burst, resulting in coolant pouring all over the road. Mr. Krider drove a short distance to a family friend's house and called a towing company to tow the Cayenne back to his home.

44. The following day Mr. Krider called his local Porsche authorized dealership, Niello Porsche, located in Rocklin, and described what had happened to someone in the service department.

45. Mr. Krider asked the service person if he could estimate the potential cost of such a repair. Without hesitation, the employee replied "the average cost for this is between $3200-3300 because the repair takes so many labor hours." Mr. Krider was also informed that the only available replacement part for the repair was the OEM update kit with aluminum pipes. The service person informed Mr. Krider that the dealership did "a lot of these" coolant pipe repairs, "usually a few a month."

46. Unwilling to pay for such a costly repair, Mr. Krider purchased a discounted OEM update kit from a Porsche dealership in Oregon and repaired the coolant pipes himself. Due to the fact that he had to order the parts and the length of time involved in the repair, Mr. Krider had to rent a car for two weeks. Mr. Krider spent over $1000 as a result of the defective plastic coolant hoses and over 12 hours of his time repairing the vehicle himself.

47. Although it is impossible to visually inspect the transmission seals, Mr. Krider is extremely concerned that both his starter and transmission seals may have been compromised as a result of the amount of coolant that poured out from the plastic pipes.

48. As a consequence of Porsche's practices, Plaintiff Krider paid more for his vehicle than the vehicle was worth, and incurred out-of-pocket expenses to repair and replace the defective coolant hoses.

## VI. CLASS ACTION ALLEGATIONS

49. Plaintiffs bring this action on behalf of themselves and all other similarly situated California residents. Plaintiffs seek to represent a Class initially defined as follows:

(a) All current owners or lessees of a Porsche Cayenne, Cayenne GTS, Cayenne S, Cayenne Turbo, or Cayenne Turbo S, residing in the State of California and/or who purchased or leased said vehicle in California; and

(b) All former owners or lessees of a Porsche Cayenne, Cayenne GTS, Cayenne S, Cayenne Turbo, and Cayenne Turbo S, residing in the State of California and/or who purchased or leased said vehicle in California.

(c) The Porsche Cayanne, Cayenne GTS, Cayenne S, Cayenne Turbo, and Cayenne Turbo S vehicles at issue in this case must have or have had plastic coolant pipes. ("the Class")

50. Excluded from the Class are individuals who have claims for personal injury resulting from failure of the plastic coolant tubes in their vehicles. Also excluded from the Class are Porsche Cars North America, Inc., Porsche Automobil Holding SE, any affiliate, parent, or subsidiary of Porsche Cars North America, Inc. or Porsche Automobil Holding SE; any entity in which Porsche Cars North America, Inc. or Porsche Automobil Holding SE has a controlling interest; any officer, director, or employee of Porsche Cars North America, Inc. or Porsche Automobil Holding SE; any successor or assign of Porsche Cars North America, Inc. or Porsche Automobil Holding SE; anyone employed by counsel for Plaintiff in this action; and any Judge to whom this case is assigned as well as his or her immediate family and staff; and anyone who purchased a Cayenne for the purpose of resale.

51. This action has been brought and may properly be maintained on behalf of the Class proposed above under the criteria of Federal Rule of Civil Procedure Rule 23.

52. Numerosity. Members of the Class are so numerous that their individual joinder herein is impracticable. Upon information and belief, Porsche has sold or leased more than 83,000 Class Vehicles in the United States. Although the exact number of Class members and their addresses are unknown to Plaintiffs, they are readily ascertainable from Porsche's records.

Class members may be notified of the pendency of this action by mail and/or electronic mail, supplemented (if deemed necessary or appropriate by the Court) by published notice.

53.   Existence and predominance of common questions. Common questions of law and fact exist as to Plaintiffs and all members of the Class and predominate over questions affecting only individual Class members. These common questions include:

(a) Whether Porsche provided Plaintiffs and Class members with a vehicle installed with defective cooling system component parts, specifically plastic coolant tubes;

(b) Whether Plaintiffs and Class members' vehicles have a lower market value as a result of the plastic coolant tubes manufactured and/or installed on their vehicles;

(c) Whether Porsche knew or should have known that the plastic coolant tubes were destined to crack and leak coolant;

(d) Whether the defective nature of the plastic coolant tubes or of Porsche's costly replacement program constitute material facts;

(e) Whether Porsche has a duty to disclose the defective nature of the plastic coolant tubes to Plaintiffs and Class members;

(f) Whether the plastic coolant tubes defect leads to damage to other component parts;

(g) Whether Porsche has engaged in unlawful, unfair, or fraudulent business practices;

(h) Whether Plaintiffs and the other Class members are entitled to equitable relief, including but not limited to restitution or injunctive relief; and

(i) Whether Plaintiff and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

///

54. Typicality. Plaintiffs' claims are typical of the claims of the Class because, among other things, Plaintiffs purchased a Cayenne automobile with the same plastic coolant pipes in the cooling system found in all other Cayenne automobiles.

55. Adequacy. Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the members of the Class they seek to represent. Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously. The interests of members of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

56. Superiority. The class action is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs. The damages suffered by each individual Class member may be limited. Damages of such magnitude are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. Further, it would be virtually impossible for the members of the Class to individually and effectively redress the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

57. In the alternative, the Class may be certified because:
    (a) the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members which would establish incompatible standards of conduct for Porsche;
    (b) the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other

Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

(c) Porsche has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

## VII. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**(Violation of California Consumer Legal Remedies Act;**
**California Civil Code §§ 1750, *et seq.*)**

58. Plaintiffs on behalf of themselves and all others similarly situated, reallege, as if fully set forth, each and every allegation previously alleged.

59. This cause of action is brought against Defendant pursuant to the California Consumer Legal Remedies Act ("CLRA"), California Civil Code §§ 1750, *et seq.*

60. Defendant's conduct that violated and continues to violate the CLRA, includes without limitation, the following:

(a) Representing that its Cayenne vehicles have characteristics, uses, and benefits which they do not have in violation of § 1770 (a)(5):and/or

(b) Representing that its Cayenne vehicles are of a particular standard or quality, when they are of another, in violation of § 1770 (a)(7).

61. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of the CLRA when Porsche failed to disclose and/or concealed material facts from Plaintiffs and Class members, namely, that the plastic coolant pipes manufactured and installed by Porsche were defective in design, materials and workmanship, and that the plastic coolant pipes were likely to fail prematurely resulting in damage to other component parts and the engine. Plaintiffs and Class members suffered damages as a result.

62. To this day, Defendant continues to engage in unlawful practices in violation of CLRA. Plaintiffs are informed and believe that Defendant continues to conceal the defective

nature of the plastic coolant pipes by failing to notify Plaintiffs and Class members of the defective plastic coolant tubes in the Cayenne vehicles.

63. Plaintiffs seek injunctive relief for the CLRA claims in this complaint. Plaintiffs have served on Defendant, simultaneously with this Complaint, a CLRA notice letter in compliance with Civil Code § 1782(a).

64. As a result of Defendant's acts and practices as alleged herein, Plaintiffs and Class members suffered injury, and pursuant to Civil Code §§ 1780 *et seq.*, Plaintiffs seek :

    (a) an order temporarily and permanently enjoining defendants from continuing the unfair business practices alleged in this Complaint; and

    (b) injunctive relief in the form of a recall or free replacement program.

## SECOND CAUSE OF ACTION

**(Violation of California Unfair Business Practices Act;**

**Cal. Bus. & Prof. Code §§ 17200, *et seq.*)**

65. Plaintiffs on behalf of themselves and all others similarly situated, reallege, as if fully set forth, each and every allegation previously alleged.

66. California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

67. Defendant engaged in unfair competition or unlawful, unfair or fraudulent business practices in violation of the Unfair Business Practices Act when Porsche committed the acts alleged in this Complaint, including the failure to disclose that the plastic coolant tubes in the Cayenne are defective and can lead to damage to engine component parts and engine failure. Defendant further violated the Unfair Business Practices Act when it unlawfully designed, manufactured, formulated, sold, and introduced into the stream of commerce for purchase by Plaintiffs, the general public, and the Class, the Cayennes containing the defective plastic coolant tubes.

68. Defendant also violated § 17200 by failing to provide Plaintiffs and Class members any notice or recall program for the defective plastic coolant tubes despite Porsche's knowledge of the plastic coolant tubes premature failure, said knowledge evidenced by Porsche's manufacture of the OEM update kit as the only available replacement part.

69. As a direct and proximate cause of Defendant's unfair methods of competition and unfair or deceptive acts or practices, Plaintiffs and Class members have suffered actual damages in that they own Cayennes containing plastic coolant tubes that will prematurely fail, and that have required, or will require, Plaintiffs and Class members to incur costs to repair and/or replace the coolant tubes with aluminum pipes, and to repair any damage caused to other engine component parts as a result of the plastic coolant tube failure.

70. Defendant's conduct is ongoing and constitutes unfair, unlawful, and/or fraudulent business acts and practices within the meaning of § 17200.

71. Plaintiffs and Class members seek preliminary and permanent injunctive relief against these unfair business practices. Pursuant to §§ 17203 and 17204 of the Business & Professions Code, Plaintiffs and Class members are entitled to: (a) an Order requiring Porsche to cease the unfair and unlawful, deceptive acts alleged herein; (b) full restitution of all monies paid to Porsche as a result of its deceptive practices, including but not limited to, disgorgement of all profits derived from its concealment of the defective plastic coolant tubes; (c) interest at the highest rate allowable at law; and (d) the payment of their attorneys' fees and costs pursuant to California Civil Code Procedure §1021.5.

### THIRD CAUSE OF ACTION
### (Unjust Enrichment)

72. Plaintiffs on behalf of themselves and all others similarly situated, reallege, as if fully set forth, each and every allegation previously alleged.

73. As set forth above, Porsche has profited unjustly from the sale of the Class vehicles at inflated prices as a result of concealing the defective plastic coolant tubes and has profited from its extensive sales of its manufactured aluminum replacement pipes and component parts contained in the OEM "update kits."

74. Porsche has further unjustly profited by avoiding the costs associated with a government mandated recall or other enforcement actions by engaging in the conduct alleged herein.

75. It would be unfair for Porsche to retain the profits it has unjustly earned at the expense of Plaintiffs and Class members.

76. Plaintiffs and Class members seek an Order requiring full restitution of all monies paid to Porsche as a result of its deceptive practices, including but not limited to, disgorgement of all profits derived from its concealment of the defective plastic coolant tubes.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the Class, seek judgment against Defendant, and in favor of Plaintiffs, and to award the following relief:

1. Certification of the proposed Class;

2. An order temporarily and permanently enjoining Defendant from continuing the unfair business practices alleged in this Complaint;

3. Injunctive relief in the form of a recall or free replacement program;

4. Costs, restitution and disgorgement in an amount to be determined at trial;

5. An award of costs and attorneys' fees; and

6. Such other or further relief as may be appropriate.

Respectfully submitted,

Dated: February 2, 2011

COTCHETT, PITRE & McCARTHY, LLP

RODDY, KLEIN & RYAN

SCHLANGER & SCHLANGER, LLP

By: _____
NIALL P. McCARTHY
Attorneys for Plaintiffs

CLASS ACTION COMPLAINT 15

## JURY TRIAL DEMAND

Plaintiffs hereby demand a jury trial for all claims so triable.

Respectfully submitted,

Dated: February 2, 2011

        **COTCHETT, PITRE & McCARTHY, LLP**

        **RODDY, KLEIN & RYAN**

        **SCHLANGER & SCHLANGER, LLP**

By: _____
      NIALL P. McCARTHY
      *Attorneys for Plaintiffs*

CLASS ACTION COMPLAINT      16